# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

Mason Woolley
114 north street, unit A
Belchertown, Massachusetts 01007

                        Plaintiff,                  Civil Action No:

    V.

University of Massachusetts
181 President's Drive
Amherst, Massachusetts;

Denise Barton in her individual and official capacity
333 South Street, 4th Floor
Shrewsbury, MA                                      JURY DEMAND

Gerald Leone in his individual and official capacity
One Beacon Street, 31st Floor
Boston, MA 02108

Jeffrey Silvia in his individual and official capacity
181 President's Drive
Amherst, Massachusetts

Patrick Archbald in his individual and official capacity
181 President's Drive
Amherst, Massachusetts

                        Defendants,

---

## PARTIES

1. Plaintiff resides in Massachusetts in the county of Hampshire.
2. Defendants resides at 333 South Street, 4th Floor Shrewsbury, MA, 181 President's Drive, Amherst, MA and One Beacon Street, 31st Floor Boston, MA 02108.

## JURISDICTION

1. This Court has subject matter jurisdiction over the federal claims raised pursuant to 28 U.S.C. §§ 1331.
2. This Court has jurisdiction to issue injunctive, and other relief under 28 U.S.C. §§ 2201 and 2202.
3. The state law claims are related to the federal law claims as to form the same controversy under Article III of the U.S. Constitution.[1] Federal courts can hear a case in which there is a federal component. *Osborn v. Bank of the United States, 9 Wheat. (22 U.S.) 738 (1824).*

## INTRODUCTION

This case is case regarding abuses and fraud committed in and through the justice system by the defendants. These evidenced abuses include ex-parte communication by the defendant's attorney Denise Barton in Hampshire Superior Court, interference with a MCAD investigation and request by top counsel of the University of Massachusetts Gerald Leone to shut down the investigation. Repeated engagement and contact without criminal charges or reasonable basis to suspect criminal charges by University of

---

[1] "All cases, in law and equity, arising under this Constitution, [and] the laws of the United States..." US Const, Art III, Sec 2.

Massachusetts Police Department including surveillance of Mason Woolley at public events, discussion by UMPD officers to interfere with Mason Woolley's tenet's rights and warrantless searches of Mason Woolley's student email. UMPD also monitored Mr. Woolley attorney-client communications through cultivation of a source. UMPD egregious pursuit of Mason Woolley has continued presently up until 2022. Furthermore in 2022 newly discovered evidence was acquired.

The defendant will likely bring up a settlement between the parties in federal court in 2019 however defendant's misconduct to effectuate a settlement as supported by newly discovered evidence renders grounds to bring forth this civil action. The university and the defendants in the lawsuit acted to unjustly and untowardly to gain advantage in state court proceedings to thwart plaintiff's lawsuit by engaging in *ex parte* communication with the court, shutting down a MCAD investigation as a favor from defendant and by relying on the UMPD to bolster its civil case. After the fact the defendants relied upon their surreptitious actions to gain a favorable settlement in federal court. Furthermore, the defendants withheld evidence from discovery requests.

The invasion of privacy count is reliant upon newly acquired evidence. The defendants years after the settlement continued to harass Mr. Woolley with spurious justification. This case was withdrawn without prejudice by the plaintiff last year due to health issues and is now being refiled.

## FACTS

1. Plaintiff & Student, Mason Woolley has diagnosed medical conditions, which result in a disability; he suffers impairments, which result in disability, and has been received special services because of these impairments since the age of 5. Plaintiff currently receives SSDI and has found to be disabled by the Social Security Administration.

2. In the fall of 2017 student re-enrolled at the University of Massachusetts Amherst after a voluntarily withdraw due to medical problems in 2013. At a later point, the University claimed the student was academically suspended although no notice was given to the student.

3. Student, Mason Woolley enrolled in in disability services to receive accommodations for his health ailments and disability; student provided a doctor's note to that effect.

4. While a student at the university, Mason Woolley informed Disability services of a discriminatory incident with instructor John Goodhue which he doubted if Mr. Woolley's disability was "real" and encouraged him to withdraw the course. Student informed Disability Services of the incident and his concern regarding fairness of the professor, concerns he had been discriminated against and concerns his accommodations were adhered to university employee, Cynthia Wills whose position was consumer manager and role was to act as an advocate. Cynthia Wills ignored the student's concerns and took no actions. Student also informed Academic Dean Jackie Brousseau-Pereira who similarly ignored the student's concerns and took no actions. As result of the university's failure to take action, the student concerns and needs were not met and he withdrew the course.

5. After withdraw, the student contacted Department Chair of the English Department, Randall Knoper who apologized for the instructor's conduct and promised to implement a training program to train professors how to interact properly with disabled students. Although it did not appear any training program was implemented and student's future contact with Disability Services co-director Ben Ostiguy and Cynthia Wills regarding disability services and English department working on this program and he was ignored.

6. In the spring 2018 semester, student enrolled in Comparative Politics or PolySci 111 with Professor Timothy Pachirat. Student wanted to meet with Timothy Pachirat regarding his accommodations as he customarily did with all professors in order to establish the specifics of accommodations and extensions and so that only the professor is aware of his disability. Without

the student's permission or necessity, the teacher's assistants for this course and in other courses, TA's were informed of the student's disability. Professor Pachirat initially refused to meet with the student and deferred the meeting to a TA, then Professor Pachirat stated he would contact Disability Services regarding a meeting ostensibly to schedule a meeting, Professor Pachirat than informed Disability Services he would not meet with the student.

7. After this incident and the prior incident with Instructor Goodhue, the student, Mason was concerned with the competence, reliability and helpfulness of his consumer manager, Cynthia and sought a new manager to be assigned to him. Student was concerned the consumer manager's actions precluded him from receiving the proper accommodations and support he needed and when facing adverse action by faculty, the consumer manager failed to stand up for the student's rights and advocate on his behalf in consideration of his disability. Therefore, student contacted Disability services in early March and requested a meeting with then co-director, Ben Ostiguy. His request for a change and meeting was ignored several weeks and when he finally spoke with Ben Ostiguy, he promised to consider changing the student's consumer manager but took no action.

8. In a meeting with Academic Dean, Jackie Brousseau-Pereira, student was discouraged from seeking accommodations and was told that he is not always entitled to an accommodation by the University.

9. In May of 2019 the student, Mason was given notice of an "academic dismissal" and the option to appeal it; within this email it stated per University's rules and regulations it requires that the academic dean make the decision and if it is unfavorable, the student may appeal it to the Committee on Admissions and Records. The Dean refused to follow the proper process and instead sent the decision to the Committee on Admission and Records. Furthermore, it is stated that academic dismissal can only occur if the prior semester the student's GPA was below a 2.0; the student's GPA was above a 2.0 and a 2.7 GPA for the semester. Dean Pereira wrote a cover letter to the aforementioned committee, the official role and duty of the committee is to make a

decision on academic merit and mitigating factors affecting a student's academic performance. The dean's cover letter largely included non-academic information including concern of the student's email correspondence with faculty and copy an email correspondence. It also included the recommendation that he be withdrawn because of the undergraduate's advisors personal opinion and feelings towards the student. The cover letter also discussed the student's social interactions and social skills and referred to them in a negative and disparaging manner as "hostile". In a prior meeting with the Dean, student was asked what his disability was and the Dean expressed this would be kept in confidence and she only asked out of "concern". The student informed the Dean of one of his disabilities and after that point, the Dean asked the student what the name of his doctor's office was, the doctor and where it was located. The dean relayed this information to the Committee without the student's permission and mischaracterized his health problems as resulting in "fears" that "may not" seem " rational". At no point did the student state to the Dean his disability or otherwise his thinking or actions were not rational. The committee did not acknowledge all mitigating circumstances and the student were not allowed to attend the hearing.

10. Mason Woolley was academically withdrawn while a student without a hearing the following spring semester after a series of discriminatory actions by university staff and denial of his ADA rights.

11. Around that time Mason met with then co-director of Disability Services Ben Ostiguy and Academic Dean, Jackie Brousseau-Pereira regarding his dismissal. Co-director, Ben Ostiguy informed the student during his conversation that faculty and staff perceived the student as having poor social skills and often misinterpreted them. Student asked Ben if he thought this effected the actions and treatment towards the student and he said it was likely yes and his behavior caused resentment which was later take out on him.

12. In the meeting with Dean Pereira, the student asked why it being his second semester back and earning decent grades, C's and B's, was he being withdrawn? He stated that it did not make any

sense. Dean Pereira said to the student "You know Mason I am always honest with you …. Can I be honest with you now?" Dean Pereira then informed the student that the actual reason for withdraw was his social skills and discontentment over emails he had sent to faculty and staff.

13. In the summer of 2018 Mason Woolley and Umass entered a housing contract so that he would reside on campus until August 31,2018. (Exhibit 1)

14. On July 25th, 2018 Mason Woolley under the ADA requested a reasonable accommodation so that he be temporarily moved to a vacant dorm or apartment during fire alarm testing. The campus during the summer had ample vacant housing. The university refused to provide an accommodation and instead offered a meal voucher.

15. 7 days after this request, On July 31st, 2019 the university provided a 2-day notice to quit for Mason Woolley to leave his university apartment. (Exhibit 2) UMPD officer Jeffrey Silvia in plain clothes visited Mason's apartment and told him that he was being watched and warned him to leave his apartment within the notice. Mason Woolley under fear and duress left his apartment within the 2-day range.

16. As the federal court is aware there is a legal process for eviction, in Massachusetts it requires a 14 day notice to quit and to file a complaint in court if the tenet does not leave which then the tenet is granted a trial[2]. Massachusetts Law does not provide for capacious evictions with two day notices.

17. UMPD discussed in their internal emails circumventing the tenet rights of Mason Woolley prior to the notice of quit on July 27th, 2019. "It is clear to me that (redacted reference to Mason Woolley) is applying tenant-landlord agreements to his current housing situation." And in a second email on July 27th, 2019 "Regarding his conflating landlord-tenet agreements—I know through another source that (redacted reference to Mason Woolley) is working with Student Legal Services." (Exhibit 3)

---

[2] https://www.mass.gov/service-details/find-out-how-to-start-the-eviction-process , https://www.mass.gov/how-to/file-an-eviction-case

18. Deputy chief of Police Patrick Archbald on August 2 in an email wrote "It is (redacted) expectation that at 3 PM, (redacted reference to Mason Woolley) will no longer have access to the apartment. if (redacted reference to Mason Woolley) refuses to leave the apartment, it is (redacted) expectation that UMPD remove him from the space as he no longer has authorization to be present in the apartment." (Exhibit 3)

19. On 8/30/2018 Mason Woolley filled a complaint with HUD regarding disability discrimination regarding the refusal of Umass to provide a reasonable accommodation. The complaint was transferred from HUD to MCAD. (Exhibit 4)

20. Mason Woolley met with an attorney at Student Legal Services to discuss his pending academic dismissal and other legal issues including campus housing, the attorney Fredric Bartmon was enthusiastic about the strength of Mason Woolley's case and informed the plaintiff his due process rights had been violated. A few meetings later this attorney informed that he could no longer represent Mason Woolley without providing an explanation and referred him to Attorney Paul Rudof, an attorney with no civil litigation experience.

21. Attorney Paul Rudof advised Mason Woolley to file a lawsuit with the count of "breach of contract".

22. Mason Woolley filed a lawsuit for breach of contract in Hampshire Superior Court against the Defendant University of Massachusetts in September 2019.

23. On 10/22/2019 the university filled a motion to dismiss predicated on Mason Woolley's complaint being barred for reasons of sovereign immunity. As the federal court is aware sovereign immunity does not apply under *ex parte young*. At that time Mason Woolley was unaware and Mason Woolley did not sue the defendants in their personal/individual capacity.

24. Mason Woolley researched the law further and filled an amended complaint on 11/6/2022 nearly a month prior to the hearing on the motion to dismiss on 12/4/2022. Mason Woolley included

university registrar Patrick Sullivan in his *personal and individual capacity* as a defendant and added 4 counts.

25. Concurrent to the lawsuit, Mason Woolley's mcad complaint was ongoing and the attorney representing Umass, Denise Barton was in regular correspondence[3] with mcad investigator Beth Crosby. On November 26th, 2019 Attorney Barton wrote to investigator Crosby. " I have not yet seen any amendment and would appreciate a copy. Mr. Woolley has filled numerous documents in the state court proceeding in Hampshire Superior Court.. As result the court has asked me to compile a status of all the pending matters—including court-based, agency-based and University Based concerning Mr. Woolley. I am in the process of doing so and will provide it to the court by week's end in advance of the December 4th, 2018 hearing on the University Motion To Dismiss." (Exhibit 5)

26. Attorney Barton is referencing ex-parte communication with the court and presumably the judge regarding Mason Woolley's upcoming hearing. Mason Woolley was not present during this communication nor was he cced on any correspondence with the court in the communication which Attorney Barton references. Nor is there any submissions to the court on the docket showing a compilation of a "pending matters concerning Mr. Woolley" (exhibit 6). Attorney Barton and the court was in communication regarding a key motion prior to it being heard.

27. Three days before the hearing Mason Woolley was trespassed from the University of Massachusetts on 12/1/2018 while he was studying for a class he was auditing at Amherst College. UMPD was aware Mason Woolley was auditing this course because they had been monitoring Mason Woolley's emails. Denise Barton obtained a copy of the trespass order and presented it to the Judge during the motion to dismiss hearing on 12/4/2018 for an additional reason to dismiss the lawsuit against the university stating it would be "futile" to allow the lawsuit to proceed because Mason Woolley was now barred from visiting the campus.

---

[3] Denise Barton's and Gerald Leone's emails were obtained through a public records request

28. Hampshire Superior Court on 12/4/2022 dismissed Mason Woolley's claim citing sovereign immunity. One day later 12/5/2022 Hampshire Superior Court struck down Mason Woolley's amended complaint "due to clerical error". Mason Woolley spoke to the clerk's office regarding this dismissal and was informed that the clerk's office made a mistake and that nothing could be done now that the motion to dismiss had been decided. Mason Woolley was denied an opportunity to cure his complaint due to a "clerical error". In light of new knowledge of ex parte communication by Denise Barton prior to the hearing it is likely the university gained influenced over the court's decision outside of sanctioned means(i.e motions and hearings).

29. As part of the MCAD complaint, the investigator Beth Crosby requested that the university provide " Please state whether there were empty dorm rooms and apartments available on July 26, 2018 that may have been used to grant Mr. Wooley's accommodation request." "Please state the number of empty dorm rooms and apartments available on July 26, 2018;" "Please provide a copy of the signed and dated "Payment Agreement." (Exhibit 7)

30. Attorney Barton claimed a mistake had occurred despite the original request being months ago and emailed Beth Crosby on 12/3/2018 stating " Bob Judge and I just spoke. We each believed that the other person was preparing a response to the purported new complaint filed by Mr. Woolley: therefore, neither of us worked on it. Bob will immediately begin working on a response, including reaching out to the campus folks that could possibly have any additional information, and believes he will be in a position to submit a response to the new complaint by next Monday, December 10, 2018." (Exhibit 7)

31. At no time did the university, attorney Barton or Robert Judge provide the requested evidence to MCAD which would have shown empty dorms and apartments and therefore the university should have as they were required under the ADA to provide the accommodation.

32. Instead on the same day December 3rd, 2018 the top lawyer for the entire University of Massachusetts system and former prosecutor Gerald Leone emailed Beth Crosby

"Attorney Crosby: On behalf of Denise Barton (one of the most diligent lawyers I have ever worked with), and the UMass OGC… I am requesting a more reasonable extension as requested by Attorney Barton, especially given the additional information that you are compelling us to produce within 24 hours of your renewed request."

" I certainly hope that if we are unable to produce all of these documents and information on less than 24 hours, that it would not be held against us and the Commonwealth, whom we represent."
(Exhibit 8)

33. The following day on December 4th, 2018 Mason Woolley's MCAD complaint without an investigation and without the evidence requested by MCAD was dismissed and closed. Gerald Leone interfered with the MCAD investigation for the benefit of his client. It appears the actions of Denise Barton, Robert Judge and Gerald Leone violated M.G.L Chapter 151B section 8 "Any person, employer, labor organization or employment agency, who or which shall willfully resist, prevent, impede or interfere with the commission or any of its members or representatives in the performance of duty under this chapter, or shall willfully violate a final order of the commission shall be punished for each offense by imprisonment for not more than one year, or by a fine of not more than five hundred dollars, or by both" [4]

34. On January 22, 2019 Mason Woolley filled a lawsuit in federal court for violation of the ADA and Section 504 of the Rehabilitation Act.

35. During a court hearing Attorney Barton asked for meditation. Mason Woolley and the University of Massachusetts engaged in ADR on July 24th, 2019. A settlement was reached.

---

[4] https://malegislature.gov/Laws/GeneralLaws/PartI/TitleXXI/Chapter151B/Section8

36. At that time Mason Woolley was not aware of the university's and defendant's ex parte communication in state court and closure of the mcad complaint as a favor. The meditation in federal court was to settle all claims, state, mcad and federal. Mason Woolley was also unaware of the extraordinary extent UMPD was involved in the civil dispute between himself and the university. As the court knows to threaten or to use criminal law to gain an advantage in civil proceeding is barred by the rules of professional conduct. No charges were ever filled by UMPD against mason Woolley and mason Woolley engaged in no criminal conduct. As the emails of the UMPD clearly demonstrate, the university police intervened in a civil matter.

37. In March 2022 Mason Woolley obtained public records regarding the UMPD from his friend Shea Melvin. Shea Melvin obtained these records from the Massachusetts Secretary of State after months of appeals from the university represented by Attorney Barton. After repeated orders to provide the records by the Secretary of State the university refused to provide the records until SOS public records administrator Joshua Stair stated he would refer the matter to the Attorney General. The university then provided the requested records to Shea Melvin who then sent them to Mason.

38. The recently discovered internal records of UMPD shed light on many prior interactions Mason Woolley had with UMPD and displayed a disturbing abuse of police resources to intersect with the University's civil dispute with Mason Woolley. Mason Woolley is law-abiding citizen and was particularly distressed by the repeated encounters by UMPD over non-criminal matters.

39. UMPD surveilled Mason Woolley's student email address(mwoolley@umass.edu) without a warrant and without consent of Mason Woolley. (Exhibit 9). Internal UMPD records show discussion by UMPD officers that Mason Woolley's conduct as a student never raised to the level of a crime.

40. UMPD surveilled Mason Woolley's emails regarding a course he was auditing at Amherst College. (Exhibit 9) UMPD likely used this information to find out the room he was studying in and issued him a no-trespass order. An order which was given to Denise Barton days before a court hearing. The no-trespass order was then used as an argument during the hearing to dismiss his case because *even if the court provided an injunction,* mason would still be barred from setting foot on campus.

41. UMPD surveilled Mason Woolley communications with journalists at the Daily Collegian. (Exhibit 9). Mason Woolley also contacted the Daily Collegian regarding abuses by the UMPD and by the university administration.

42. UMPD surveilled Mason Woolley's communications with a club he was a member of, Umass Marketing Club. (Exhibit 9)

43. UMPD obtained a copy of ticket he had for an event with Sean Spicer, a highly recognized speaker who previously worked for the White House. (Exhibit 9). During this event UMPD surveilled Mason Woolley. Other UMPD records show the stated reason for monitoring by UMPD at this event is that they suspected Mason Woolley was wearing the hat of another student, despite this hat being lost in another building weeks prior.

44. UMPD records references the cultivation of a "source" who was in contact with UMPD regarding Mason Woolley's meetings with his attorney. (Exhibit 9).

45. UMPD records show UMPD circumventing Mason Woolley's landlord-tenet rights (a civil matter) and an assertion of police force without a court order to forcefully evict Mason Woolley from his campus apartment. (Exhibit 9).

46. Throughout his encounters with the university administration and UMPD Mason Woolley has been stunned and appalled at the extraordinary extent the university has gone to deny him his education, interfere with his personal life(housing) and engage in discrimination against him.

47. Even after a settlement, the university and particularly the UMPD has continued to show an obsessive zeal directed towards Mason Woolley.

48. UMPD Detective Michael Williams in October 2022 repeatedly called Mason Woolley's personal phone number which is rarely given out and a second phone number often shared. Upon not returning his call Detective Michael Williams emailed Mason Woolley at his personal email masemase280@gmail.com and vaguely stated that he wanted to speak to him regarding an "event". When pressed upon details he stated the event was an "investigation into emails that were sent to targeted members of the campus community". Mason Woolley asked the detective how he was able to obtain his non-public email and the detective conceded his email was obtained as part of an investigation. The officer also did not deny that UMPD had previously obtained Mason Woolley's emails without a warrant.

49. On 11/5/2018 Mason Woolley was pulled over by UMPD while driving on a public roadway through the campus. Mason Woolley at the time lived in the town of Amherst and regularly drove through the campus as part of his travels. The police officer claimed the reason for the stop was a "broken tail light". During the stop the officer interrogated Mason about his destination and showed little interest in the stated reason for the stop. On 10/15/22 Firestone performed a state required annual inspection of Mason's car which showed his tail lights were working properly, on 11/6/2022 Mason Woolley after the stop had Firestone inspect his vehicle which showed the tail lights were working properly. The stop by UMPD was pretextual.

## COUNTS

1. *Violation of the fourth amendment under 42 U.S. Code § 1983*

The University of Massachusetts and employee Patrick Archbald under the color of the law deprived Mason Woolley of his constitutional right to be protected from unreasonable search and seizure under the fourth amendment by obtaining copies of his emails without a search warrant. The university used his emails for multiple egregious purposes.

2. *Violation of the Fair Housing Amendments Act and American with Disabilities Act under 42 U.S. Code § 1983 regarding UMPD conduct*

The university of Massachusetts police department, employees Jeffrey Silvia and Patrick Archbald under the color of the law deprived Mason Woolley of his federal right to be protected from housing discrimination when they used the color of the law to deprive Mason Woolley of his apartment without a court order after he alleged he was discriminated in his housing on the basis of his disability and sought an accommodation under the ADA.

3. *Violation of the Fair Housing Amendments Act and American with Disabilities Act under 42 U.S. Code § 1983 regarding counsel's conduct*

    Denise Barton under the color of the law withheld evidence to a state commission investigating a violation of federal law despite pledging to submit it. Attorney Gerald Leone under the color of the law "Commonwealth, we represent" sought to use his position as lead attorney representing a state university to close down a housing discrimination complaint stemming from a federal law complaint at HUD alleging disability discrimination.

4. *Abuse of process*

The university of Massachusetts police department, employees Jeffrey Silvia and Patrick Archbald abused processes[5] to bring the plaintiff under their jurisdiction for an ulterior motive and illegitimate purpose at the behest or benefit of the university which was engaged in civil disputes with the plaintiff.

UMPD although its role is clearly criminal nonetheless was in engagement with Denise Barton and gave her a copy of a trespass order which was presented to a judge at a hearing to gain a favorable outcome. This trespass order was issued days before the hearing and information regarding the plaintiff's activities during that trespass, studying for an audited course were obtained as part of an illegal search on his emails.

UMPD abused its resources and authority to cultivate a source to monitor Mason Woolley's contact with his attorney. UMPD abused its authority to conduct surveillance on Mason Woolley's emails when it had already conceded that mason Woolley's behavior did not raise to a criminal bar and without a warrant. After communication with Residential Life and information from a "source" regarding Mason Woolley's desire to be protected from illegal evictions, UMPD and Patrick Archbald expressed an intention to "remove" him from his apartment without a court order and without statutory authorization.

UMPD has continued to abuse its authority, using the color of the law to stop Mason Woolley for non-existent traffic violations. The defendant's actions have caused the plaintiff enormous emotional distress and the cooperation of UMPD with the university in civil actions facilitated a favorable outcome for the university in the lawsuits it was defending against and settlement (obtained by fraud and deceit) and therefore the defendant has further suffered consequential damages from the loss of income from his education.

---

[5] Massachusetts does not require a showing that process was illegal, only that a process was used *MHA fin. Corp v Varkeno INVS. LTD, 583 F Supp 2d 173 (D Masson 2008)*

### 5. *Invasion of privacy*

Mass G.L. Chapter 214, Section 1B states: A person shall have a right against unreasonable, substantial or serious interference with his privacy.

UMPD employees and the university of Massachusetts invaded Mason Woolley's privacy when the violated his sacrosanct communications with his Attorney for the purposes of aiding their effort to unlawfully coerce him out of his apartment. The university of Massachusetts and police employees unlawfully obtained Mason Woolley's private emails, emails which were secluded and password protected. The interference was unreasonable as it was done unlawfully without a search warrant and it was substantial or serious.

UMPD officers did not *merely* monitor Mason Woolley's emails but did so with the likely purpose of using them for the purposes of aiding their employer's defense in a civil lawsuit. UMPD also used his emails to learn of his whereabouts at a public event and monitored him at his event using the flimsy excuse that it was for a missing hat. UMPD showed such an obsessive zeal over Mason Woolley they even monitored his emails with a student club and their invitation for him to join a fundraising event. UMPD went on a fishing expedition and left no stone unturned. The disclosure and awareness that UMPD has repeatedly invaded the plaintiff's privacy has caused him great emotional distress. Furthermore, these unlawfully obtained emails and communication with his student attorney were used to aid the university in its legal defense and ultimately settlement and therefore resulted in consequential damages.

### 6. *Intentional or reckless infliction of emotional distress*

The defendants recklessly or intentionally inflicted emotional distress on the plaintiff when it sought to interfere with a court proceeding to deprive the defendant of his pursuit of justice over harms committed by the university, when it interfered and impeded with a MCAD investigation to deprive

him of his justice over violation of his rights when the university discriminated against him, when it under the color of the law of police officers coerced Mason Woolley to leave his apartment in 2 days. Mason Woolley suffered emotional distress when he was monitored at the Sean Spicer Event and when he learned UMPD has unlawfully obtained his private personal emails.

Mason Woolley's life was greatly upheaved when he was coerced to leave his apartment, he suffered housing insecurity and his medical conditions were aggravated including a hospitalization.

The harm done to him as a person and his health caused great emotional distress. The defendants knew or should have known that emotional distress would be the likely result of its conduct. The defendant's conduct is extreme and outrageous, grossly indecent and intolerable in our nation and state. The defendant's misconduct is alarming and offensive, particularly given their actions were committed through the justice system. The defendant's misconduct casts a stain on our justice system which the public trusts will be upheld with integrity, honesty, fairness and a rigidity to the law. The defendant's conduct raises to the level of being odious when it is readily apparently it was done for their *benefit*. The University of Massachusetts in its zeal to defend itself against a single untrained pro se plaintiff went through extraordinary efforts to ensure it would prevail in its legal defense.

**Brief legal summary regarding legal issues**

A key defense likely to be raised by the defense is Res Judicata which would bar this lawsuit. In the Supreme Court case *Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955)*, the court determined that res judicata does not apply when there are sufficient new facts which have been uncovered. Quoting the case: "That both suits involved essentially the same course of wrongful conduct is not decisive." "While the Judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist, and which could not possibly have been sued upon in the previous case."

Another key defense is the settlement. Plaintiff pro se understands the seriousness which the court considers settlements however the underhanded and secretive activity by the defendants unknown prior to the settlement has brought grounds to bring this suit as well as the invasion of privacy count which can be brought on knowledge when the invasion of privacy occurred, not when the act itself occurred.

The court has an inherent power to overturn a settlement should fraud on the court occur and there is no time limit in when this action can be brought. See *Drobny v. C.I.R., 113 F.3d 670, 677 (7th Cir. 1997)* ("A] decision produced by fraud on the court is not in essence a decision at all, and never becomes final" The remedy if such fraud has occurred is to vacate the judgment and deny "the guilty party [of] all relief." *Boyer v. GT Acquisition LLC, No. 106-CV-90-TS, 2007 WL2316520, at *4 (N.D. Ind. Aug. 9, 2007).*
4 *Maclin v. Freake 650 F.2d 885 (7th Cir. 1981) Cookish v. Cunningham, 787 F.2d 1 (1st Cir. 1986) Lawlor v. National Screen Service Corp., 349 U.S. 322 (1955)*

Sanctions may be imposed, and the entire cost of the proceedings, including attorneys' fees, may be assessed against that party who committed the fraud.[6]

"Where fraud is practiced upon a party to induce the party to enter into an agreement, and the wrongdoer intends that the court adopt that fraudulent agreement as part of a judgment, then there is fraud upon the court."[7]

There is not only the determination of fraud, misconduct, or other grounds to invalidate to settlement but also the determination of fraud upon the court. The defendants used ex-parte communication to prevail in a state court, withheld evidence to a state tribunal(MCAD) and further the then lead attorney (Gerald Leone) of the entire university system asked as a favor for this withholding of evidence to not be used against his client as well as the cooperation between the defendant's then counsel with UMPD

---

[6] Wright & Miller, 11 Federal Practice & Procedure § 2870 (3d ed.).
[7] Burlington N. R. Co. v. Warren, 574 So. 2d 758, 764

and UMPD concurrent abuses during these civil actions. The release of claims included the state court case, the MCAD complaint as well as the federal claim. The court has the inherent power to overturn judgments and in the first circuit it has been ruled settlements constitute final judgments.[8]

**WHEREFORE**, Plaintiff respectfully asks the court to grant:

1. Award plaintiff compensatory damages for emotional distress, and mental anguish from the Defendant.
2. Award Plaintiff compensatory damages for loss of future income and economic harm.
3. Award plaintiff punitive damages for defendant's reprehensible conduct.
4. Award plaintiff damages for aggravation of his medical conditions and back disorder.
5. Set aside or void the settlement or other purposeful relief in relation should it be an impediment for this suit to proceed.
6. Award plaintiff a permanent injunction.
7. Award such relief as the court deems appropriate.

Respectfully submitted,

Mason Woolley
114 north street, unit a
Amherst, Massachusetts
masonlaw@vivaldi.net
413-258-1280
Pro Se

---

[8] United States v. Baus, 834 F.2d 1114 (1st Cir. 1987)