UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASON WOOLLEY,

      Plaintiff,

          v.

UNIVERSITY OF MASSACHUSETTS,
AMHERST, et al.,

      Defendants.

Civil Action No. 24-30121-MGM

MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR RECUSAL
(Dkt. Nos. 24 & 28)

June 24, 2025

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Plaintiff, Mason Woolley, was a student at the University of Massachusetts ("UMass") campus in Amherst, Massachusetts in 2017 and 2018. During that time, Plaintiff has alleged that UMass, and four of its employees, discriminated against him on the basis of his disability. This is the third case he has brought against UMass in which he asserts claims arising out of his experiences as a UMass student between 2017 and 2018. The first case ended after Plaintiff entered into a settlement agreement with UMass, and Plaintiff voluntarily dismissed the second case. Defendants, UMass and four of its employees, each sued in their individual and official capacities, have now moved for dismissal in this case. They argue dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because sovereign immunity deprives this court of subject matter jurisdiction over any claims based on conduct occurring after the first case settled, and the remainder of Plaintiff's claims are foreclosed by the terms

of the settlement agreement. While Defendants' motion to dismiss has been pending, Plaintiff filed a motion for recusal. The court will deny Plaintiff's Motion for Recusal (Dkt. No. 28) and grant Defendants' Motion to Dismiss (Dkt. No. 24). Those claims that fall within this court's federal question jurisdiction are dismissed based on the operation of the 2019 settlement agreement. Having dismissed the federal question claims, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will dismiss those claims without prejudice.

## II.    MOTION FOR RECUSAL

There is a well-established, two-pronged standard for recusal. First, a judge must recuse when there is an actual conflict as defined by statute. 28 U.S.C. § 455(b). Second, in the absence of an actual conflict, a judge must recuse when there is an appearance of conflict such that "an objective, reasonable member of the public, fully informed of all the relevant facts, would fairly question the trial judge's impartiality." *In re United States*, 441 F.3d 44, 56–57 (1st Cir. 2006) (quotations omitted); *see also United States v. Kelley*, 712 F.2d 884, 889 (1st Cir. 1983); 28 U.S.C. § 455(a). This judge has never had an actual conflict that required recusal from cases in which UMass is a party. Nor has he been required to recuse from cases in which UMass is a party based on the objective standard for an appearance of conflict. Nonetheless, during the years when this judge was paying tuition to UMass on behalf of his children, that limited relationship was disclosed in all cases in which UMass was a party, and this judge voluntarily offered to recuse at the request of any party. This judge last paid tuition to UMass in 2019, the same year the disclosure and offer to recuse were made during Plaintiff's first case against UMass. Neither party requested recusal at that time. The court declines to recuse in this case based on a relationship that did not concern Plaintiff in 2019, and has since terminated, as there is no objective reason to question the court's impartiality.

### III.   MOTION TO DISMISS STANDARD

Federal courts are courts of limited jurisdiction and as such can only act where they have subject matter jurisdiction. "The party invoking federal jurisdiction has the burden of establishing that the court has subject matter jurisdiction over the case." *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009). Generally, jurisdictional questions raised pursuant to Rule 12(b)(1), including Eleventh Amendment sovereign immunity issues, are resolved prior to the court addressing merits arguments raised under Rule 12(b)(6). *Mulero-Carrillo v. Roman-Hernandez*, 790 F.3d 99, 105 (1st Cir. 2015). However, when appropriate, the court may choose to resolve claims on the merits in favor of the state, rather than address sovereign immunity issues. *Id.*

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." *Id.* at 570. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). Additionally, the court may "consider 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (quoting *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003)) (alteration in original). When such documents contradict an allegation in the complaint, the document "trumps the allegation." *O'Brien v. Wilmington Tr. Nat'l Ass'n as Trustee to CitiBank, N.A.*, 506 F. Supp. 3d 82, 90 (D. Mass. 2020) (quotations omitted). The same type of review applies to affirmative defenses raised in a motion to dismiss; if "upon review there is 'no doubt' that the plaintiff's claim is barred by the raised

defense, dismissal is appropriate." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (quoting

*Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001).

## IV.    BACKGROUND

In 2019, Plaintiff filed a two-count complaint against UMass, asserting violations of Section

504 of the Rehabilitation Act of 1971 and the Americans with Disabilities Act ("ADA". (19-cv-30004,

Compl., Dkt. No. 1.) At the joint request of the parties, the case was assigned to Magistrate Judge

David H. Hennessy for court-sponsored mediation, and this court appointed pro bono counsel for

the limited purpose of assisting Plaintiff during the mediation. The mediation was fruitful, and the

parties signed a settlement agreement. UMass agreed to waive a debt owed by Plaintiff, pay him

$10,000, and release any claims it had against Plaintiff. (Jul. 24, 2019 Settlement Agreement, Dkt. No.

25-1, ¶¶ 2(a)-(c).) In exchange, Plaintiff agreed to dismiss the case and release UMass, and its

employees, "whether acting in an individual capacity or on behalf of" UMass, from any liability for

the claims asserted in the 2019 complaint, as well as "from all claims, demands, causes of action,

grievances and liabilities of any kind."[1] (*Id.* at ¶¶ 3(a) & (c).) He also agreed that a 2018 Trespass Order

---

[1] Plaintiff's release of claims reads in its entirety:

Woolley, for himself and for his assigns, heirs, executors and administrators, knowingly and
voluntarily releases and forever discharges University and all of their past, present and future trustees,
affiliates, employees, officers, advisors, agents, representatives, successors and assigns, whether acting
in an individual capacity or on behalf of University, from the allegations referred to in the Litigation
and from all claims, demands, causes of action, grievances and liabilities of any kind (upon any legal
or equitable theory, whether contractual, common law, statutory, federal, state, local or otherwise and
including, but not limited to, any claim or right under 20 U.S.C. § 1681, et seq. (Title IX of the
Education Amendment of 1972), as amended, the Civil Rights Act of 1964, as amended, M.G.L. ch.
151B, as amended, the Massachusetts Civil Rights Act, as amended, M.G.L. c. 214 § lC, 42 U.S.C. §
1983, and any claims for fees, costs and disbursements of any kind, whether known or unknown,
which Woolley now has, ever had, or hereafter may discover, against University or any employee,
agent, or independent contractor of University based on any actual or alleged act, omission,
transaction, practice, conduct, event or other matter, that pre-dates the execution of the Agreement,
including all alleged claims set forth in and/or concerning the Litigation. Woolley expressly
understands and agrees that to the extent that any one or more provision(s) of any law or of any
principle(s) of common law of any state or country is or are in any way applicable to limit the scope
and/or operation of the release set forth in this Agreement including, but not limited to, limitations

4

would permanently preclude his physical or virtual presence on any property owned by UMass. (*Id.* at ¶ 3(b).)

Plaintiff initiated the second case in 2022 by filing a six-count complaint against UMass and four employees in their individual and official capacities. (22-cv-30145, Compl., Dkt. No. 1.) The 2022 complaint referenced the same events from 2017 through 2018 that formed the basis of his 2019 suit against UMass, and noted the 2019 settlement agreement, though Plaintiff did not attach it as an exhibit. Plaintiff alleged that he had obtained documents earlier in 2022, which showed that UMass engaged in "fraud and illegal behavior . . . regarding the settlement," and those documents were the reason he filed his second complaint. (22-cv-30145, Compl., Dkt. No. 1.) Plaintiff voluntarily dismissed the 2022 complaint in March 2023, while the defendants' motion to dismiss was pending. (22-cv-30145, Compl., Dkt. No. 28.)

More than a year later, Plaintiff filed his complaint in this action and included the same six counts listed in the 2022 complaint, all of which were based on the events that occurred in 2017 and 2018. Three of the counts are brought pursuant to 42 U.S.C. § 1983, and assert claims for (1) Fourth Amendment violations by UMass and its employee Peter Archbald, who allegedly accessed Plaintiff's UMass student email account without a search warrant; (2) violations of the Fair Housing Amendments Act of 1988 ("FHAA") and the ADA by Archbald, and a second UMass employe, Jeffrey Silvia, when Plaintiff was barred from his UMass housing in the summer of 2018; and (3) violations of the FHAA and ADA by UMass employees Denise Barton and Gerald Leone based on their responses to a discrimination complaint made by Plaintiff and investigated by the Massachusetts Commission Against Discrimination. Plaintiff also asserted three claims pursuant to state law: (1)

---

on the effect of such release on unknown or unsuspected claims, such provision(s) and principle(s) are hereby knowingly and voluntarily waived by Woolley. In signing this Agreement, Woolley waives and releases all damages, including future damages, arising from the released events;

(Jul. 24, 2019 Settlement Agreement, Dkt. No. 25-1, ¶ 3(c).)

abuse of process based on actions taken when Plaintiff's UMass housing was terminated in the summer of 2018, (2) invasion of privacy based on UMass employees surreptitiously accessing Plaintiff's UMass student email address in the lead up to the summer 2018 eviction; and (3) intentional or reckless infliction of emotional distress based on actions UMass and its employees took to encourage Plaintiff to quickly vacate his UMass housing in 2018.[2]

## V.    DISCUSSION

The central issue before the court is whether Plaintiff's claims are foreclosed by the settlement agreement the parties signed in July 2019. Plaintiff referred to the settlement agreement in his complaint and has not contested the authenticity of the document Defendants attached as an exhibit to their motion to dismiss. Defendants contend the settlement agreement is an enforceable contract, and its terms clearly and unambiguously bar Plaintiff from pursuing claims against Defendants based on conduct that occurred before the parties executed the settlement agreement. Plaintiff counters that the settlement agreement should be invalidated because Defendants engaged in fraud.

In Massachusetts, "'[a] settlement agreement is a contract and its enforceability is determined by applying general contract law.'" *Dacey v. Burgess*, 202 N.E.3d 1172, 1180 (Mass. 2023) (quoting *Sparrow v. Demonico*, 960 N.E.2d 296, 301 (Mass. 2012)). Courts recognize two types of fraud that can void a contract: fraud in the factum and fraud in the inducement. Fraud in the factum voids a contract in the rare case when a party has been misled about the essential nature of the document signed by that party, as, for example, if a party thought they were signing a receipt, but actually signed a note.

---

[2] Plaintiff also described two interactions with employees of the UMass Police Department ("UMPD") during 2022. In October 2022, Plaintiff was contacted by a UMPD employee and learned UMPD employees had previously accessed his UMass email without a warrant. He also alleged that he was subjected to a pretextual stop while driving through the UMass Amherst campus in November 2022, though the court is not confident about the timing of that incident because Plaintiff first listed the stop as occurring in 2022, then described related events as occurring in 2018. Plaintiff did not refer to either 2022 event when describing the conduct that formed the basis for any of his six claims.

*Smith v. Jenkins*, 732 F.3d 51, 75 (1st Cir. 2013). Plaintiff has not alleged any facts that would support a finding that the settlement agreement is void due to fraud in the factum. Although Plaintiff now claims he would not have signed the settlement agreement had he known the full scope of Defendants' prior actions, he has not alleged that he did not know he was signing a settlement agreement or had been misled about the contents of the agreement. The settlement agreement was executed after the parties participated in court-sponsored mediation, and Plaintiff was represented by counsel.

A claim for fraud in the inducement occurs when a plaintiff knowingly signs a contract, but does so based on a false representation made by the defendant. "A contract induced by fraudulent misrepresentations is voidable, not void." *Shaw's Supermarkets, Inc. v. Delgiacco*, 575 N.E.2d 1115, 1117 (Mass. 1991). To establish a claim for fraud in the inducement, a plaintiff must show: "(1) that [the defendant] made knowingly false statements; (2) that those statements were made with the intent to deceive; (3) that those statements were material to [the plaintiff's] decision to sign the [agreement]; (4) [the plaintiff] reasonably relied on those statements; and (5) that [the plaintiff] was injured as a result of [that] reliance. *Zyla v. Wadsworth*, 360 F.3d 243, 254 (1st Cir.2004).

Although Plaintiff claimed Defendants engaged in "underhanded and secretive activity," the only conduct alleged in his complaint occurred prior to the 2019 litigation, or several years later. (Compl., Dkt. No. 1 at 19.) Plaintiff agreed to participate in court-sponsored mediation prior to discovery. He was represented by counsel during the mediation, and he has not identified any false or misleading statements Defendants made during the 2019 litigation, let alone statements made for the purpose of inducing him to sign the settlement agreement. When parties reach a settlement prior to discovery, they typically do not know the full scope of the other party's conduct. One of the incentives for early settlement is that it allows a party to avoid sharing compromising information that would be discoverable. In the absence of allegations about specific, misleading statements made by UMass

during the 2019 litigation, the court concludes Plaintiff has not established a basis for voiding the settlement agreement based on fraud in the inducement.

An agreement may also be subject to recission if a party can prove by clear and convincing evidence that there was a mutual mistake regarding an essential element of the agreement. *Browning-Ferris Indus., Inc. v. Casella Waste Mgmt. of Mass., Inc.*, 945 N.E.2d 964, 975 (Mass. 2011). Here, Plaintiff has alleged only that he was mistaken about the scope of Defendants' past conduct when he agreed to the terms of the settlement agreement. The existence of a mutual mistake is also inconsistent with Plaintiff's assertions of fraud.

Having concluded Plaintiff's factual allegations do not support recission or fraud sufficient to void the settlement agreement, the court looks to the terms of the 2019 settlement agreement to determine whether Plaintiff's claims are foreclosed by the agreement. The language in the settlement agreement is plain and unambiguous and, therefore, the court construes the contract terms as a matter of law. *Mason v. Telefunken Semiconductors Am., LLC*, 797 F.3d 33, 38 (1st Cir. 2015) ("In contract disputes, the court may construe clear and unambiguous contract terms as a matter of law."). In exchange for forgiveness of a specific debt from UMass, receipt of a payment, and a release of claims, Plaintiff agreed to release all claims he had against UMass, and its employees, at that time, regardless of whether the claims were known to Plaintiff. This broad language supports Defendants' assertion that they are entitled to dismissal as to all claims Plaintiff has asserted based on conduct by UMass, and its employees, prior to July 2019, including Plaintiff's three § 1983 claims. Those were Plaintiff's only claims brought pursuant to federal law, and they supplied the sole basis for the court's federal question jurisdiction[3]. Given the early stage of this litigation, the court declines to exercise

---

[3] Since the settlement agreement clearly bars Plaintiff's federal claims, the court bypasses the sovereign immunity issue. *See Mulero-Carrillo*, 790 F.3d at 105.

8

supplemental jurisdiction over Plaintiff's remaining state law claims, which will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's First Motion for Recusal (Dkt. No. 28) and ALLOWS Defendants' Motion to Dismiss (Dkt. No. 24). Plaintiff's federal claims are dismissed with prejudice; his state law claims are dismissed without prejudice. This case may now be closed.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge